## Case No. 4,167.
DUNLOP v. MUNROE.
[1 Cranch, C. C. 536.] [1]
Circuit Court, District of Columbia. June Term, 1809. [2]

[1] [Reported by Hon. William Cranch, Chief Judge.]
[2] [Affirmed in 7 Cranch (11 U. S.) 242.]

Mr. Jones, for defendant,

C. Lee, F. S. Key, and P. B. Key, for plaintiffs, contra,

THE COURT (DUCKETT, Circuit Judge, absent) refused to give the instruction as prayed, but instructed the jury, that if they should be satisfied by the evidence that the letter and notes were received in the defendant's office at Washington, and were not sent on to Petersburg, and that the defendant, and his clerks and servants exercised with respect to the said letter and notes that degree of care and diligence which a prudent man would have taken of his own property, the defendant is not liable in this action for any loss which happened by reason of not sending on the same to Petersburg. A bill of exceptions was taken by the plaintiffs' counsel, but a juror was withdrawn; the plaintiffs had leave to amend, and the cause was continued till the next term.

June 20th, 1808. The cause came on again for trial upon the amended declaration, which charged the defendant with the loss, whether it happened in Washington, or between Washington and Petersburg.

Mr. Jones, for defendant, prayed the court to instruct the jury that the defendant is not liable, under the first count, for the embezzlement or fraud of his clerks, provided he used due diligence and caution in appointing clerks of good repute for fidelity and honesty, and of fair reputation, who took the oaths required in the postmaster-general's instructions; unless such misconduct was known to the defendant in time to have prevented it. He relied upon the case of Whitfield v. Lord Le Despencer. Cowp. 754.

BUT THE COURT (FITZHUGH, Circuit Judge, contra) refused the instruction, being of opinion that the defendant was civilly liable for the acts of his servants or clerks, as much as if those acts had been done by himself.

Mr. Jones, for defendant, then prayed the court to instruct the jury, that upon the counts charging the loss to have arisen from the personal negligence of the defendant, the plaintiffs cannot recover without proof of such personal negligence.

C. Lee and F. S. Key, contra, contended that those counts might be supported by proof of the negligence of the defendant's clerks, and cited Esp. 657, 703, and Brucker v. Fromont, 6 Term R. 659.

Mr. Jones, in reply, cited Esp. 651.

THE COURT (nem. con. but with some hesitation) gave the instruction as prayed, notwithstanding the case of Brucker v. Fromont. The judges in that case did not, on reason and principle, approve their own decision, but considered themselves bound by the case of Turberville v. Stampe, 1 Ld. Raym. 264, which case, in the opinion of this court, does not justify the inference drawn by the judge in Brucker v. Fromont. It is certainly most convenient and just that the plaintiff should set forth his cause of action as it really is, and the court thinks that the plaintiffs ought to be holden to the strict proof of their declaration. The plaintiffs, then, had leave to amend their declaration, on payment of the costs of the term, and a continuance if the other party should desire it; whereupon a juror was withdrawn, and the cause was again continued.

February 2d, 1809. This cause came on again upon the amended pleadings, the plaintiffs having filed a new declaration, consisting of nine counts, to which the defendant pleaded eighteen pleas, to some of which the plaintiffs demurred, and upon others joined issue; for a particular statement of which, see 7 Cranch [11 U. S.] 242.

THE COURT decided all the demurrers in favor of the plaintiffs. The first was special, and was to so much of the fifth plea as virtually denied the defendant's personal liability for the acts of his clerks, provided he had used due precaution, diligence, and circumspection, to have the business of the office well conducted, by appointing and employing as clerks, none but persons of competent skill and knowledge, of fair character, of known good repute for fidelity and honesty, and who had taken the oaths required by law, and by the instructions of the postmaster-general. The plaintiffs contended that the defendant was personally liable for the acts of his clerks, and that it was immaterial whether the loss happened through their neglect or his. The defendant contended that the first and second counts, to which alone the fifth plea was applicable, were bad, because they charged that the letter and bank-notes were secreted and taken by the defendant, or some other person employed by him, which was too uncertain a charge, even if the defendant was liable for the acts of his clerks, which he

denied, unless those acts were done with the knowledge and consent of the defendant. He contended that the clerks of the deputy-postmaster bear the same relation to him, as the deputy-postmasters do to the postmaster-general. They are all equally sworn officers of the United States, and each liable only for his own acts in the discharge of his several duties, as appears by various provisions of the post-office law of 2d March, 1799. He also relied upon Whitfield v. Lord Le Despencer, Cowp. 754, and Lane v. Cotton, 1 Ld. Raym. 647.

The plaintiffs relied upon the general rules of law, applicable to the relations of master and servant, and principal and agent, and cited 1 Salk. 18, 282, 440, 441, 637; Rowning v. Goodchild, 3 Wils. 443, and Dyer, 238b, pl. 38. The case of Whitfield v. Lord Le Despencer, is not an authority for this case, because the letters patent by which the defendants in that case were appointed, expressly declare that they shall not be "responsible for the officers appointed by them" —"save only for their own voluntary defaults or misfeasances," which the act of congress does not. The inferior officers were established by the act of parliament. The officers gave bond to the king for his use. They were to take the oaths of allegiance and supremacy, and to receive payment for their services from the receiver-general, and not from the postmaster-general. The revenue arising from postages, was to be applied to the public use. But in the present case, the offices of the clerks of the deputy-postmasters, are not created by the act of congress; they are his private clerks and servants; they give no security to the United States; they receive no pay from the United States, but are paid by the postmaster out of the revenues of the office.

Although all persons "employed in the care, custody, or conveyance of the mail," are required by the second section of the act of 1799, to take an oath "faithfully to perform all the duties required of them, and abstain from every thing forbidden by the laws," &c.; yet this does not constitute them independent officers, or in any manner alter the relation between them and their employers. As to the alternative charge in the first and third counts, it is certain to a common intent, and if the postmaster is liable for his clerks, it is sufficient upon general demurrer. But the plea is also bad because it is hypothetical, and does not admit or deny the fact that the letter and bank-notes were received in the defendant's office, or lost or embezzled by the defendant or his clerks, but only says if, &c., then such embezzlement was without any participation or connivance of the defendant.

THE COURT (FITZHUGH, Circuit Judge, contra,) was of opinion, that the defendant was liable for the negligence of his clerks, and that therefore the plea was bad, and that the declaration was not faulty in substance, on account of the alternative averment, which, they thought was substantially an averment of embezzlement by the defendant and his clerks. The next demurrer was to the seventh plea, pleaded also to the first and second counts, and which was grounded upon the supposition that the facts stated in those counts amounted to felony.

THE COURT, however, (DUCKETT, Circuit Judge, contra,) was of opinion that the facts stated in those counts did not amount to felony and adjudged the plea bad.

THE COURT, also, (nem. con.) was of opinion, that all the hypothetical pleas were bad, on general demurrer. The fourteenth plea was pleaded to the second, fourth, fifth, sixth, seventh, eighth, and ninth counts. As it applied to some of these counts, the plaintiffs replied specially, and as to the other counts to which it was pleaded they demurred.

To this course, Mr. Jones, for defendant, objected, and contended that as the plea was pleaded to all those counts jointly, the plaintiffs could not apply it severally to each count.

BUT THE COURT (DUCKETT, Circuit Judge, contra,) overruled the objection, and said that the plaintiff might demur to the plea as it applied to some counts, and reply to it as it applied to other counts. And as it was one of the hypothetical pleas, it was adjudged bad upon the demurrer.

April 10th, 1809. THE COURT (DUCKETT, Circuit Judge, absent,) was of opinion that the sixteenth and seventeenth pleas were bad, because they neither admit nor deny that the letter arrived at the defendant's post-office on the first of August, in time to be sent on to Petersburg by the mail of the next day; and that the eighteenth was bad because it was hyphothetical and argumentative, &c.

June 19, 1809. Upon the trial of the issues of fact, which occupied a whole week, a great number of bills of exceptions were taken. Those taken by the plaintiffs are stated in 7 Cranch [11 U. S.] 242, &c. But, as there was a general verdict for the defendant upon all the issues, the points ruled against the defendant, are not there reported.

C. Lee offered to read a deposition taken in Philadelphia, under a commission issued by consent, but without interrogatories filed, and without evidence of notice to the defendant of the time and place of taking it. The defendant's counsel objected, and THE COURT sustained the objection.

Mr. Jones, for defendant, objected to the testimony of Mr. Stevens, the plaintiff's clerk, who delivered the letter into the post-office in Philadelphia, that he was interested, as by fixing the loss on the defendant, he would exonerate himself.

C. Lee, for plaintiffs, cited Peake's Evidence, 101, and THE COURT overruled the objection. THE COURT permitted parol evidence to be given that John Townes, be-

fore whom a deposition was taken in Virginia, was a justice of the peace, upon the authority of Turner v. Fendall, 1 Cranch [5 U. S.] 117, and U. S. v. Bollman, 4 Cranch [8 U. S.] 75.

Mr. Jones, for defendant, moved the court to instruct the jury, that the neglect to re-mail the letter by the first mail, does not make the defendant liable, unless the loss happened in consequence of such neglect, and that such neglect was wilful and amounted to gross negligence;—which instruction THE COURT refused to give, but instructed the jury in effect, that the defendant and his clerks were bound to exercise that degree of care and diligence which a prudent man usually exercises with regard to his own affairs; and that a non-compliance with the instructions of the postmaster-general as to the time of making up the mails, &c., might be excused by circumstances. That the time allowed by the act of congress for making up the mails is prima facie a reasonable time, and that the burden of proof is on the defendant to justify a non-compliance with the act in that respect. And upon the prayer of the defendant's counsel, THE COURT further instructed the jury that the defendant, being a sworn officer, is to be presumed to have done his duty faithfully until the contrary is proved. And THE COURT refused to permit evidence of the negligence of the defendant's clerks to be given on the issues joined upon the sixth and tenth pleas to the fifth and ninth counts, which charged the loss to have been incurred by the defendant's own negligence. Upon the coming in of the jury with their verdict, the counsel for the plaintiff moved the court that the jurors should be polled, that is, asked individually if they had agreed to the verdict. 3 Bac. Abr. Juries, G; 2 Hale, P. C. 299; 29 Assizes, 27; 40 Assizes, 10.

CRANCH, Chief Judge, said there had never been such a practice in this court; and that it was strongly impressed on his mind that such an application had been made and refused; but he could not recollect in what case.

Mr. Key mentioned a case of assault and battery in Frederic county, in Maryland, where it was conceded that the jurors might have been polled, and the only doubt was, whether the right had not been waived by the question having been put to them generally, in the usual form, whether they had agreed on their verdict.

Mr. Lee also mentioned a case in the Winchester district court in Virginia, where it had been done.

FITZHUGH, Circuit Judge, asked whether in those cases there had not been a suspicion, or suggestion of improper conduct in the jury.

Mr. Key stated that there was no direct suggestion in the case alluded to by him; but one of the jurors having been sick, it was suspected that possibly the verdict had been

agreed to be rendered without his full assent. It, however, seemed then to be a demand of common right.

THE COURT (DUCKETT, Circuit Judge, absent,) said it was not a matter of common right to poll the jury, and they would not fix a precedent by which either party might capriciously insist on polling the jury without assigning any reason therefor.

FITZHUGH, Circuit Judge, added, that the want of practice is strong evidence of the want of right. An extraordinary case should be made out to justify a departure from the ordinary course of proceeding.

Verdict for the defendant upon all the issues.